JACKSON v. SUNLIT FRUIT CO.

(Circuit Court of Appeals, Ninth Circuit. October 9, 1922. Rehearing Denied.)

No. 3771.

1. **Husband and wife** ⟨⇒⟩137(6)—**Husband's contract for sale of fruit to be grown during period of years on wife's land held void.**

Husband's contract for sale of fruit to be grown during period of years on land which was known by both him and the buyer to be the separate property of his wife, *held* void, where the husband acted without authority from wife.

2. **Husband and wife** ⟨⇒⟩267(1)—**Husband's contract to sell fruit to be grown on community property for 10-year period, without wife's written consent thereto, held valid.**

Husband's contract for the sale of fruit to be grown for 10 years on land which constituted community property *held* valid, though the wife did not join therein or give written consent, notwithstanding Civ. Code Cal. § 172, prohibiting a husband from conveying community property for a valuable consideration without written consent of the wife.

---

⟨⇒⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Evidence** &#8680;18—Common knowledge that price of peaches varies from year to year.

It is common knowledge that the price of peaches varies more or less from year to year during 10-year periods.

4. **Costs** &#8680;234—Awarded to neither party, where judgment is affirmed in part and reversed in part.

Where judgment for $44,707.18 is reversed, except in so far as it awarded plaintiff $8,059, but affirmed as to such amount, neither party will be awarded costs in the Circuit Court of Appeals.

In Error to the District Court of the United States for the Second Division of the Northern District of California; Robert S. Bean, Judge.

Action by the Sunlit Fruit Company against Martha M. Jackson, executrix of the last will and testament of Elmer B. Jackson, deceased. Judgment for plaintiff, and defendant brings error. Affirmed in part, and reversed in part.

M. M. Getz, of San Francisco, Cal., and A. H. Hewitt, of Yuba City, Cal., for plaintiff in error.

Burke Corbet and John R. Selby, both of San Francisco, Cal., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. We are unable to approve the disposition of this case made by the learned judge of the court below. It was an action for damages brought against Elmer B. Jackson during his lifetime; but, he having died shortly after the bringing of the suit, his widow was duly appointed executrix of his estate, and a supplemental complaint filed against her as such executrix, resulting in a judgment against her as such executrix in the sum of $44,707.18, with interest after the entry of such judgment, with costs.

Both the complaint and supplemental complaint upon which the action was tried were based upon two certain contracts in writing, both of which were signed by the husband, Elmer B. Jackson, during his lifetime, and on the part of the plaintiff to the action, the Sunlit Fruit Company, by one F. E. Laney as its buyer of fruit. Both contracts were so executed at Yuba City, Cal., February 16, 1917; the first being designated in the complaint and in other portions of the record as Exhibit A, and the second one as Exhibit B. By Exhibit A, Jackson, called in the contract "seller," agreed to sell to the Sunlit Fruit Company, a corporation, therein designated "buyer"—

"for the period of ten (10) years, from 1917 to 1926, inclusive, all subject to the conditions as hereinafter set forth, the following named fruits now growing and to be grown during the years and seasons covered by period aforesaid upon the orchards and lands of 'seller' in the county of Sutter, state of California, to wit: Seven (7) acres at Bogue Station."

The contract then proceeded to name the two varieties of cling peaches so contracted for, the price and size thereof, and to state the number of trees of the two varieties specified—479 of one and 192 of the other. It then set forth certain conditions, exceptions, and place of delivery, and concluded as follows:

&#8680;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"It is mutually agreed between the parties hereto that the covenants herein contained shall go with the land hereinabove described, and shall bind both the parties hereto, their heirs, administrators, executors, successors, and assigns."

The case shows without dispute that the orchard and land embraced by Exhibit A was the separate property of the defendant to the action, Martha M. Jackson. The contract contained in Exhibit B was exactly the same in all respects, except in the description of the acreage and of the number of trees—the acreage being described therein as "nineteen (19) acres near Oswald," and the number of trees being stated to be 900 of one of the two designated varieties, and 1,053 of the other variety.

The case shows without dispute that the orchard and land embraced by Exhibit B was the community property of Jackson and his wife. The alleged cause of the damages sued for was the failure and refusal of Elmer B. Jackson to deliver any of the peaches contracted for subsequent to 1917. Those grown during that year he delivered and was paid for in accordance with the contracts in question; but, the market price of peaches having subsequently materially increased, he repudiated the contracts and notified the fruit company that he would make no further delivery thereunder.

[1] The contracts were undoubtedly purely executory, as was said by the court below, providing, as they did, for the sale and delivery through a series of years of personal property, namely, peaches; but that property, as both parties to the contracts knew, was to be the product in part of land which was the separate property of the wife of Elmer B. Jackson, and in part of land which was the community property of his wife and himself. The defendant in error was chargeable with knowledge of the county records which showed the title to be as above stated. It is not contended that Elmer B. Jackson had any authority to contract for the sale or delivery of the peaches to be grown on the separate property of his wife. Yet the judgment against the wife as executrix of the estate of her deceased husband includes as damages suffered by the fruit company the difference between the price the contract fixed for the peaches to be grown on the wife's separate property and the market price that prevailed during the years 1918–1926, both inclusive.

Counsel for the defendant in error contends that the ownership of the property upon which the contracted-for peaches were to be grown is wholly immaterial; and such was the theory upon which the judgment complained of proceeded, for the learned judge expressly so stated in his opinion, saying:

"His contracts were to sell to the plaintiff in future certain property, and, as said in Irwin v. Williar, 110 U. S. 508 [4 Sup. Ct. 160, 28 L. Ed. 225]: 'The generally accepted doctrine in this county is, as stated by Mr. Benjamin, that a contract for the sale of goods to be delivered at a future day is valid, even though the seller has not the goods nor any other means of getting them than to go into the market and buy them.'"

But the Supreme Court, from which the court below thus quoted, added, as will be seen from 110 U. S. 508, 4 Sup. Ct. 165, 28 L. Ed. 225:

283 F.—49

"But such a contract is only valid when the parties really intend and agree that the goods are to be delivered by the seller and the price to be paid by the buyer; and if, under guise of such a contract, the real intent be merely to speculate in the rise or fall of prices, and the goods are not to be delivered, but one party is to pay to the other the difference between the contract price and the market price of the goods at the date fixed for executing the contract, then the whole transaction constitutes nothing more than a wager, and is null and void. And this is now the law in England by force of the statute of 8 & 9 Vict. c. 109, § 18, altering the common law in that respect. Benjamin on Sales, §§ 541, 542, and notes to 4th Am. Ed. by Bennett."

We do not think the rule thus announced in Irwin v. Williar, nor in the subsequent cases of Bibb v. Allen, 149 U. S. 481, 13 Sup. Ct. 950, 37 L. Ed. 819, and Clews v. Jamieson, 182 U. S. 461, 21 Sup. Ct. 845, 45 L. Ed. 1183, nor in other similar cases relied upon by the defendant in error, is applicable to the contract by which Elmer B. Jackson agreed to sell and deliver to the Sunlit Fruit Company the peaches to be grown in the series of years mentioned upon specifically described property in which both parties to the contract knew that he had no interest whatever, and no legal authority to contract for the sale of the peaches to be there grown. He could not go into the market and buy those peaches; they belonged to his wife, to be disposed of as she should choose.

[2] Regarding the peaches that were to be grown on the land which constituted community property, the case is different. The statute in existence at the time of the execution of Exhibit B, and therefore the statute applicable to that contract, was as follows:

"The husband has the management and control of the community property, with the like absolute power of disposition, other than testamentary, as he has of his separate estate: Provided, however, that he cannot make a gift of such community property, or convey the same without a valuable consideration, unless the wife, in writing, consent thereto; and provided, also, that no sale, conveyance or encumbrance of the furniture, furnishings and fittings of the home, or of the clothing and wearing apparel of the wife or minor children, which is community property shall be made without the written consent of the wife." Section 172, Civil Code of California.

[3] We discover nothing in the language of that statute, nor in any of the decisions cited by counsel, requiring the wife's consent, by writing or otherwise, to the husband's contract regarding the sale and delivery of the peaches to be grown upon the community land for a reasonable period; and we are not prepared to hold that a contract for the sale and delivery of such a crop, the price of which it is common knowledge varies more or less from year to year, covering a period of ten years, is so unreasonable as to make the contract void.

[4] We are therefore of the opinion that the court below was right in holding the contract set out in Exhibit B valid and binding upon the defendant to the action as executrix of the estate of the deceased Jackson, and, finding no valid ground for disturbing the findings and judgment based upon that, the judgment in favor of the plaintiff in the case to the extent and in the sum of $36,647.85, besides costs, is affirmed, and is reversed with respect to any greater sum. Neither party to recover costs in this court.